UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Civil Action No. **2:21-cv-3161-BHH**

| | |
|---|---|
| James L. Collier,<br><br>                         Plaintiff,<br><br>vs.<br><br>NEXSEN PRUET, LLC and Paul A.<br>Dominick, Esq.,<br><br>                         Defendants. | **VERIFIED COMPLAINT**<br>**(Jury Trial Demanded)**<br><br>1.    Legal Professional Negligence<br>2.    Breach of Fiduciary Duty<br>3.    Breach of Contract |

Plaintiff, James L. Collier, complaining of Defendants, NEXSEN PRUET, LLC and Paul A. Dominick, Esq., would respectfully show unto the Court:

## SUMMARY OF THE CASE

1.    This legal malpractice and breach of fiduciary duty case arises from NEXSEN PRUET's errors in a) failing to protect the statute of limitations from expiring on Mr. Collier's "BELO" claim in the BP *Deepwater Horizon* MDL and b) failing to protect the statute of limitations from expiring on Mr. Collier's legal malpractice claims against DOWNS LAW GROUP and its lawyers.

In violation of Mr. Collier's specific instructions, DOWNS LAW GROUP and its lawyers placed Mr. Collier in a settlement class instead of filing an individual lawsuit against BP and other defendants; thereby foreclosing Mr. Collier's ability to recover substantial actual damages to compensate him for the severe personal injuries he sustained from exposure to toxic chemicals from BP's *Deepwater Horizon* oil spill disaster and punitive damages

for BP's grossly reckless conduct.

Mr. Collier fired DOWNS LAW GROUP and its lawyers and retained NEXSEN PRUET to recover the actual damages from the toxic exposure and punitive damages against BP. BP's determination Mr. Collier was a settlement class member was never appealed or challenged under the terms available in the *Deepwater Horizon* Medical Benefits Class Action Settlement Agreement. As a settlement class member, Mr. Collier would have been permitted to pursue "Back-End Litigation Option for Later-Manifested Physical Conditions" ("BELO claims"). BP's unchallenged determination, solidified by NEXSEN PRUET's errors, prohibited Mr. Collier from pursuing non-BELO claims or recovering punitive damages against BP and other defendants as later determined by the United States District Court, when it dismissed Mr. Collier's claims with prejudice. While NEXSEN PRUET were representing Mr. Collier, the statute of limitations on Mr. Collier's BELO claims expired by July 2018, and the statute of limitations on Mr. Collier's claims against DOWNS LAW GROUP expired in April 2019.

Unbeknownst to Mr. Collier, NEXSEN PRUET had a quasi-co-counsel relationship with DOWNS LAW GROUP, as both law firms were representing clients with claims against BP in the *Deepwater Horizon* litigation. During their representation of Mr. Collier and after Mr. Collier's case was dismissed with prejudice, NEXSEN PRUET breached their fiduciary duties to Mr. Collier by concealing information about his legal malpractice claims and their relationship with DOWNS LAW GROUP to delay his ability to pursue claims against DOWNS LAW GROUP, their "co-counsel" in the *Deepwater Horizon* litigation.

## **PARTIES**

2.    Defendant, NEXSEN PRUET, LLC ("NEXSEN PRUET"), is a law firm organized

as a South Carolina Limited Liability Company and has offices in Charleston, South Carolina.

    3.    Defendant, Paul A. Dominick, Esq. ("Mr. Dominick"), is, upon information and belief, a citizen and resident of the State of South Carolina and is a lawyer licensed to practice law in South Carolina.

    4.    Plaintiff, James L. Collier ("Mr. Collier"), is a citizen and resident of New Madrid County, Missouri.

## JURISDICTION

    5.    This Court has diversity jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 in that the Plaintiff seeks to recover a sum or value in excess of $75,000 and this controversy is between citizens of different States.

    6.    Mr. Collier is a citizen of the State of Missouri, and Defendants are a citizen and corporate domiciliary of the State of South Carolina.

    7.    Based upon the acts, events, and occurrences stated, this Court has personal jurisdiction over Defendants, who are a citizen and corporate domiciliary of South Carolina and based on all Defendants' commissions of tortious acts in South Carolina causing injuries to Plaintiff.

## VENUE

    8.    Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(1) because this action was commenced in the judicial district in which NEXSEN PRUET and Mr. Dominick reside or are domiciled; and pursuant 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial

district through the acts and omissions of all Defendants.

## FACTS

9.    NEXSEN PRUET and Mr. Dominick accepted the representation of Mr. Collier to recover actual damages for his valuable personal injury claims against BP plc ("BP") and other defendants arising from Mr. Collier's exposure to toxic chemicals during the *Deepwater Horizon* oil spill; and to recover punitive damages based on BP's reckless and grossly negligent conduct.

10.    In April 2009, OCEANEERING INTERNATIONAL, INC. ("Oceaneering") hired Mr. Collier as a safety crane operator and assigned Mr. Collier to perform work on the BP *Nakika MC474* rig in the Gulf of Mexico as part of Oceaneering's contract with BP.

11.    On April 20, 2010, BP's *Deepwater Horizon* semi-submersible oil drilling rig exploded, killing 11 workers, and spilling 3.19 million barrels of oil into the Gulf of Mexico. This industrial disaster is considered the largest marine oil spill in the history of the petroleum industry.

12.    Between June 2010 and August 2010, Mr. Collier was working aboard M/V *Ocean Intervention I* as part of the oil production team constructing a 12-mile underwater pipeline between BP's *Deepwater Horizon* drilling rig and the BP *Nakika MC474* rig, the construction of which had been planned before the oil spill on April 20, 2010. During those three months and while serving as a crane operator, Mr. Collier was acutely exposed to the leaking crude oil, an oil dispersant named Corexit (2-Butoxyethanol), methane, sulfur dioxide, other sulfur compounds, aromatic hydrocarbons (benzene, toluene, xylenes), benzopyrene, some of which are known carcinogens, and large concentrations of carbon monoxide. This toxic combination exacerbates asthma, causes other respiratory

problems, causes adverse sinus reactions, causes dermal conditions, and brain damage.

13.    By August 2010, litigation related to the thousands of claims arising from the *Deepwater Horizon* oil spill had been given MDL status and assigned to the Hon. Carl J. Barbier presiding in the United States District Court for the Eastern District of Louisiana in a matter styled, *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*; Civil Action No. 10-MD-2179-CJB-SS ("*Deepwater Horizon MDL litigation*"). The *Deepwater Horizon MDL litigation* included several settlement classes, including a Medical Benefits Settlement class, and thousands of individual claims.

14.    Defendants were representing, upon information and belief, over 700 other clients on personal injury claims in the *Deepwater Horizon MDL litigation* before accepting the representation of Mr. Collier. Mr. Dominick was serving on the "Plaintiffs' Steering Committee" for the *Deepwater Horizon MDL litigation*.

15.    On May 2, 2012, the Court approved the *Deepwater Horizon* Medical Benefits Class Action Settlement Agreement ("Medical Benefits Settlement") between BP and the Plaintiffs' Steering Committee, which created a settlement class intended to resolve the Medical Benefits Settlement class members' personal injury claims from alleged exposure to oil and/or dispersants arising from the *Deepwater Horizon* incident and response.

16.    The Medical Benefits Settlement also created a process, known as the "Back-End Litigation Option for Later-Manifested Physical Conditions" ("BELO claims"), for class members to pursue later manifested physical conditions. Many individuals either properly opted out of the settlement or were not members of the settlement class.

17.    Meanwhile, Mr. Collier gradually and increasingly experienced signs and

symptoms of personal injury, which by July 2014, had manifested themselves as diagnosed illnesses, including 1) interstitial lung disease; 2) allergic rhinitis, 3) tremors; 4) benign essential hypertension, and 5) likely permanent brain damage, which were attributed to his exposure to the toxic chemicals from the *Deepwater Horizon* oil spill.

18.    In July 2014, Craig T. Downs, Esq. and DOWNS LAW GROUP, P.A. (collectively "DOWNS LAW GROUP"), a lawyer and law firm in Florida, accepted representation of Mr. Collier to pursue his individual personal injury and punitive damages claims arising from his exposure to the toxic chemicals while working aboard M/V *Ocean Intervention I* as part of the oil production team.

19.    DOWNS LAW GROUP strongly urged Mr. Collier to join as a member of the Medical Benefits Settlement class, but Mr. Collier always refused, insisting that the terms of his engagement was for DOWNS LAW GROUP to pursue his individual claims as his circumstances were unique and different from any other class member; he did not qualify to be a member of the Medical Benefits Settlement class; his injuries were significant and were unlikely to be fully compensated in a class-action; and he could recover punitive damages, which was not available in the Medical Benefits Settlement or in a BELO claim.

20.    DOWNS LAW GROUP convinced Mr. Collier to sign a "Declaration Under Penalty of Perjury" form from the Medical Benefits Settlement that DOWNS LAW GROUP had partially completed, even though Mr. Collier continued to explain that he did not qualify to be a member of the Medical Benefits Settlement (because he was not a clean-up worker nor part of any response team) and did not want to participate as a member of the Medical Benefits Settlement. DOWNS LAW GROUP assured Mr. Collier he would not be included in the Medical Benefits Settlement and directed him to complete and sign the

Declaration and return it to them. Mr. Collier did as instructed believing DOWNS LAW GROUP would not file a claim on his behalf in the Medical Benefits Settlement class.

21.    By January 2017, Mr. Collier discovered DOWNS LAW GROUP had filed a medical claim on his behalf in the Medical Benefits Settlement class despite Mr. Collier's clear instructions and intent to pursue an individual claim and not participate in the Medical Benefits Settlement. Mr. Collier made it clear to DOWNS LAW GROUP to remove him from the Medical Benefits Settlement.

22.    On January 31, 2017, BP Claims Administrator of the Medical Benefits Settlement sent a letter to DOWNS LAW GROUP containing its determination Mr. Collier was a clean-up worker and member of the Medical Benefits Settlement class. DOWNS LAW GROUP did not provide Mr. Collier with a copy of the January 31, 2017 letter. A copy of the BP Claims Administrator's letter to DOWNS LAW GROUP is filed as **Exhibit 1-1**.

23.    The Medical Benefits Settlement Agreement provided 60 days to challenge the determination Mr. Collier was a member of the Medical Benefits Settlement class, making April 1, 2017, the deadline to assert the challenge and withdraw Mr. Collier from the Medical Benefits Settlement class.

24.    In February 2017, Judge Barbier issued Pre Trial Order 63 ("PTO 63") "Regarding All Claims in the 'B3' Pleading Bundle" requiring B3 plaintiffs in the *Deepwater Horizon* MDL Litigation to file a Complaint and/or sworn statement by April 12, 2017. PTO 63 also required BP to provide Judge Barbier and the Plaintiffs Steering Committee a list of all plaintiffs who did not comply with this Order and whose claims were therefore subject to dismissal.

25.    In February 2017, Mr. Collier called Mr. Dominick at NEXSEN PRUET about

taking over his case explaining how DOWNS LAW GROUP had mishandled his matter.

26.    By late March 2017, Mr. Dominick emailed Mr. Collier letting him know NEXSEN PRUET was taking over the representation on his case and that Mr. Collier would be receiving a phone call from a staff attorney named Evan P. Williams, Esq. ("Mr. Williams").

27.    In March 2017, Mr. Williams called Mr. Collier advising NEXSEN PRUET was taking over the representation on his case. During the call, Mr. Collier explained to Mr. Williams how DOWNS LAW GROUP had mishandled his case, including DOWNS LAW GROUP's unauthorized filing a Medical Benefits Settlement claim on Mr. Collier's behalf. Mr. Collier understood Mr. Williams or other lawyers at NEXSEN PRUET took or were taking the steps necessary to remove him from the Medical Benefits Settlement class.

28.    Before April 1, 2017, the lawyers at NEXSEN PRUET were aware, or should have been aware, of the Medical Benefits Settlement terms, including the provisions a) allowing only 60 days from the date the Medical Benefits Settlement Claims Administrator determined an individual's class status to challenge that determination and b) prohibiting a class member's individual lawsuit seeking actual damages and punitive damages, other than pursuing a BELO claim.

29.    On April 1, 2017, the deadline expired to challenge the Medical Benefits Settlement Claims Administrator's determination Mr. Collier was a member of the Medical Benefits Settlement class. NEXSEN PRUET never advised Mr. Collier about the import of the April 1, 2017 deadline, or the effects it had on Mr. Collier's claims.

30.    After April 1, 2017 and under the terms of the Medical Benefits Settlement Agreement, Mr. Collier was deemed a member of the Medical Benefits Settlement class

with no ability to change or modify his status as a class member and no ability to pursue personal injury claims against BP other than a BELO claim.

31.     At no point did DOWNS LAW GROUP or NEXSEN PRUET challenge or take any action to modify the Medical Benefits Settlement Claims Administrator's determination Mr. Collier was Medical Benefits Settlement class member.

32.     By April 2, 2017, the two-year statute of limitations began running on Mr. Collier's legal malpractice claims against DOWNS LAW GROUP under Florida law because Mr. Collier was aware DOWNS LAW GROUP had included him in the Class Action without his authority and, by that date, Mr. Collier had sustained damages resulting from DOWNS LAW GROUP's errors because he could no longer pursue punitive damages against BP and the other *Deepwater Horizon MDL litigation* defendants.

33.     On April 3, 2017, Nexen Pruet sent correspondence to DOWNS LAW GROUP relaying notice of Mr. Collier's termination of DOWNS LAW GROUP's representation on his *Deepwater Horizon* personal injury claims and requesting delivery of his file.

34.     On April 3, 2017, at 9:19 a.m., Mr. Williams sent a reply email to Mr. Collier, Subject: Downs Law Documents, stating in relevant part, "Thank you for that information and documents. *It does sound like Downs [Law Group] failed to treat your case on its individual merits by lumping it in with cleanup workers*."

35.     On April 12, 2017 at 9:41 p.m., Mr. Dominick emailed Mr. Williams stating, "I think we have to file a Complaint for [Mr. Collier] as being excluded from the settlement. *If the case gets thrown out because he filed in the settlement it will be Downs [Law Group]'s fault*, or he will be determined to be a clean up worker who failed to opt out. I should have rejected him as a client but what's one more case at this point."

36.     Later on April 12, 2017, Defendants filed a Complaint on behalf of Mr. Collier along with the form required by PTO 63, Exhibit A "Form for Disclosures Regarding Remaining Clean-Up, Medical Monitoring, and Post-April 20 Personal Injury Claims, Vessels of Opportunity Charter Claims, and all other B3 Claims," commencing a lawsuit on behalf of Mr. Collier styled, J*ames Collier v. BP Exploration & Production, Inc. et al.*, Civil Action No. 2:17-cv-03415 ("*Collier v. BP Exploration*"). This lawsuit did not qualify as a BELO claim. A copy of the Complaint filed in the underlying case is filed with this Complaint as **Exhibit 1-2**.

37.     In July 2017, Mr. Collier discovered on-line that Judge Barbier had issued an Order in the *Deepwater Horizon MDL litigation* and in the *Collier v. BP Exploration* lawsuit finding the documents NEXSEN PRUET filed for Mr. Collier did not comply with PTO 63. The basis for Judge Barbier's ruling was the fact that NEXSEN PRUET did not respond to the question regarding Mr. Collier's class status on the statement they filed with the Complaint as required by PTO 63. A copy of Judge Barbier's Order is filed with this Complaint as **Exhibit 1-3**.

38.     On July 20, 2017, Mr. Collier emailed Mr. Dominick and Mr. Williams in a panic over Judge Barbier's ruling, asking for an explanation on what had occurred and their plans for the next steps to protect his claim. Later on July 20, 2017, Mr. Williams emailed a letter to Mr. Collier explaining

> [b]ecause our firm knew that your prior firm filed a claim in the Medical Benefits Settlement Program, and the claim was approved, we left this field blank. Unfortunately, the Court decided that omitting an answer in this field constituted grounds to dismiss your individual lawsuit.
>
> You should be aware, however, that because your previous law firm filed a claim on your behalf in the Medical Benefits Settlement Program, and you received an award Notice of Determination, the Court could decide that you

are not permitted to file an individual lawsuit for your medical damages regardless of the correctness of your sworn statement. In this event, your method to recover compensation would be to file what is termed a Back End Litigation Option ("BELO"). This is a separate process from the individual medical complaints of individuals who opted-out, or were not class members, of the settlement program. It allows individuals who were class members to file a BELO claim for later-manifesting chronic medical conditions. Thus, whether through an individual lawsuit, or the BELO process, you will be able to pursue compensation for your oil exposure related injuries.

As stated above, our firm will file a Motion to Reconsider regarding the dismissal of your medical lawsuit. As a result of your prior firm filing a medical claim in the Medical Benefits Settlement Program, you may have to pursue your damages through the BELO process. We will contact you once the Judge rules on our forthcoming motion.

A copy of Mr. Williams' letter is filed with this Complaint as **Exhibit 1-4**.

39.    Later on July 20, 2017, Mr. Collier emailed Mr. Williams expressing his desire to sue DOWNS LAW GROUP for jeopardizing his claims against BP.

40.    On July 26, 2017, Mr. Williams prepared a memo following telephone conference Mr. Collier stating, in relevant part,

I did advise Mr. Collier that unfortunately due to Mr. Downs' actions, that he might have to pursue a BELO case and will not be able to pursue the optout litigation. Mr. Collier stated that he does not want that because he cannot recover punitive damages through BELO but understands that we are doing everything we can to help him. Mr. Collier mentioned wanting to sue Craig Downs for malpractice, and I advised that we do not perform that type of work. Mr. Collier stated that he has never heard from Downs about the compensation/check for his DHMB claim. Client and I agreed that we would not contact Downs about the compensation, because if he accepted the check it might appear that he has accepted being considered a class member.

41.    On August 8, 2017, NEXSEN PRUET filed a motion for reconsideration on Mr. Collier's behalf, stating in relevant part, "Claimant's previous attorney filed a Medical Benefits Claim, but he should have been excluded from the class." The motion did not mention the expiration of the April 1, 2017 deadline to challenge Mr. Collier's status as a

Settlement Class Member.

42.    On October 25, 2017, at 11:13 a.m., Mr. Williams sent Mr. Dominick an email stating, "James Collier has hired an attorney in New Orleans to sue the Downs Law Group. This attorney, …., wants to speak with us and I wanted to run it by you to see what, if any, information we should provide."

43.    On November 7, 2017 at 8:16 a.m., Mr. Williams emailed Mr. Collier, Subject: Legal Malpractice, stating, "Paul and I spoke with [the legal malpractice lawyer] last Thursday and gave him all the information he requested. I would maybe reach out to him at the end of this week. If you have not heard from him. And yes, we are hoping that will speed things up as well. Again, I am not sure what is taking so long to review the motion/appeals we filed, but hopefully we will have an update soon."

44.    On December 7, 2017, almost five months after NEXSEN PRUET filed Mr. Collier's PTO 63 response, Mr. Williams emailed Mr. Collier advising Judge Barbier had granted their motion for reconsideration finding Mr. Collier's filings complied with PTO 63.

45.    No one with NEXSEN PRUET informed Mr. Collier that compliance with PTO 63 did not mean that Mr. Collier was clear to pursue claims outside of the Medical Settlement Agreement; nor of the likelihood BP would assert Mr. Collier's status as a Class Member barred him from proceeding with the pending lawsuit; nor that the Court would agree Mr. Collier's status as a Class Member barred him from proceeding with the pending lawsuit. Lawyers working for NEXSEN PRUET should have advised Mr. Collier he needed to protect the statute of limitations on his BELO claims and the statute of limitations on his legal malpractice claims against DOWNS LAW GROUP; but no one gave Mr. Collier that advice.

46.    On April 9, 2018, Judge Barbier issued Pre Trial Order 66 ("PTO 66") requiring remaining B3 Plaintiffs, including Mr. Collier, to complete and file by July 9, 2018 (later for only the 700+ NEXSEN PRUET clients, extended to August 8, 2018), a "Particularized Statements of Claim" requiring additional information about each plaintiff's claim.

47.    On April 17, 2018, Mr. Dominick sent Mr. Collier a form letter Re: Your medical lawsuit against BP, enclosing PTO 66 and directing Mr. Collier fill out and return the "Particularized Statement of Claim." A copy of Mr. Dominick's letter is filed with this Complaint as **Exhibit 1-5**.

48.    On April 19, 2018, Mr. Collier emailed NEXSEN PRUET expressing his concerns that PTO 66 seemed to apply to "Cleanup Workers, Response Workers, Residents and Tourists," reiterating that he never was in any of those categories and did not want his response to result in his claim being dismissed.

49.    Later on April 19, 2018, one of NEXSEN PRUET's lawyers, Sylvia A. Maddox, Esq. ("Ms. Maddox"), responded explaining,

> Because you are considered an 'opt-out' plaintiff, you will be included in the orders that apply to everyone else. And it just so happens that the overwhelming majority of the people who opted out were only clean-up workers and/or tourist. BP did not create or ask for a questionnaire pertinent only to your type of claim because you and [another claimant] may be the only ones that would be applicable to go out of the thousand or more plaintiffs remaining. And I know it's frustrating and honestly worrisome. It's something like this that, on its face, really doesn't pertain so much to you, *I am asking you to trust that this is the process.*

A copy of Ms. Maddox – Mr. Collier's April 19, 2018, email thread is filed with this Complaint as **Exhibit 1-6**.

50.    After May 13, 2018, when NEXSEN PRUET filed Mr. Collier's "Particularized

Statement of Claim" to comply with PTO 66, the answer to Question 9 was entered as "YES" representing to the Court that Mr. Collier performed clean up work in response to the oil spill.

51.     By July 2018, NEXSEN PRUET allowed the statute of limitations to expire on Mr. Collier's BELO claims, which had accrued four years earlier when he reasonably discovered his personal injuries had been caused by the oil and oil dispersants from BP's *Deepwater Horizon* disaster.

52.     On September 20, 2018, Judge Barbier entered an "Order to Show Cause Re: Compliance with PTO 66," directing Mr. Collier to show cause in writing before October 11, 2018, why the court should not dismiss his non-BELO personal injury or punitive damages claim based on the information in his Particularized Statement of Claim showing he was a class member and subject to the Medical Benefits Settlement Agreement. A copy of the Order to Show Cause is filed with this Complaint as **Exhibit 1-7**.

53.     On September 20, 2018, after seeing the Order to Show Cause online, Mr. Collier emailed Mr. Dominick and Ms. Maddox, advising he had reviewed the Order to Show Cause, expressing his frustration he had "*been found non-compliant again!*" and stating he was

> assuming that it is for the same reason I was found non-compliant earlier this year and that would be due to the fact that Downs [Law Group] screwed my case up. If this is the case, what is our next step? I thought that BP had agreed with the last appeal that Downs [Law Group] should have never placed me in the class that they did. …. Again, I was very adamant of the fact, with Downs Law [Group] that I did NOT want anything to do with a class action suit in no shape, fashion or form. …. When Downs [Law Group], after 2 years, confronted me and said that the Class action was my only recourse, I fired them. If worse comes to worse, I would like for you guys to put me in touch with the best Legal Malpractice Lawyer that you know!

A copy of Mr. Collier's September 20, 2018 email thread is filed with this Complaint as **Exhibit 1-8**.

54.     On September 21, 2018, at 12:44 p.m., Mr. Dominick sent Mr. Collier a reply email Subject: Non-compliant, stating, "I will get with [Ms. Maddox] and see if we can get this straightened out. Thanks for the kind words."

55.     On October 8, 2018, NEXSEN PRUET filed a "Response to Rule to Show Cause," on behalf of Mr. Collier arguing that portions of Mr. Collier's "Particularized Statement of Claim" demonstrated he was not a cleanup worker but was instead contracted to do construction work on the BP/Shell Na Kika rig. NEXSEN PRUET's Response stated, "Although BP identified Plaintiff's statement as non-compliant with PTO No. 66 because he was deemed as 'GRG Confirmed Class Member,' this statement by BP was not supported by any evidence." NEXSEN PRUET's "Response" omitted any reference to the fact they answered Question 9 as "YES" on Mr. Collier's "Particularized Statement of Claim" or that no appeal or challenge had been made to the BP Claims Administrator's determination Mr. Collier was member of the Medical Benefits Settlement class. A copy of NEXSEN PRUET's "Response to Rule to Show Cause" is filed with this Complaint as **Exhibit 1-9**.

56.     On October 25, 2018, BP filed "BP's Objections and Responses to Plaintiffs' PTO 66 Show Cause Submissions." In its opposition, BP explained that the Medical Benefits Settlement Agreement terms prohibited class members from pursuing non-BELO personal injury or bodily injury claims related to the *Deepwater Horizon* incident, and that the individuals listed on Appendix 4 attached to its Opposition, which included Mr. Collier, were properly excluded from the PTO 66 compliance list. On page 6, BP's

Opposition states,

> one plaintiff (James Collier) alleged in his Show Cause response that he was not working on the Deepwater Horizon response (see Rec. Doc. 24970), but this assertion directly contradicts his PSOC form where he checked "Yes" to the question, "Did BP, a government entity, or another company or entity hire you to perform cleanup work in response to the oil spill?" (Rec. Doc. 24970, Ex. A at Question 9)[.]

A copy of "BP's Objections and Responses to Plaintiffs' PTO 66 Show Cause Submissions" is filed with this Complaint as **Exhibit 1-10**.

57.    On October 26, 2018, NEXSEN PRUET filed a "Reply of Plaintiff James Collier to BP's Objections to Plaintiff's PTO 66 Show Cause Submission" on behalf of Mr. Collier asking Judge Barbier to "*allow Plaintiff to amend his Particularized Statement of Claim*" under PTO 66 "*to correct a previously overlooked scrivener's error in erroneously answering Question 9 in the affirmative.*" NEXSEN PRUET also acknowledged "*Plaintiff's counsel, through an unfortunate and inadvertent error, answered Question 9 on the [Particularized Statement of Claim] ("Did BP, a government, entity, or another company or entity hire you to perform cleanup work in response to the oil spill?") as yes, when the true, factual response is 'no.'*" NEXSEN PRUET did not provide Mr. Collier with a copy of the Reply it filed, which would have revealed their error to Mr. Collier. A copy of NEXSEN PRUET's "Reply of Plaintiff James Collier to BP's Objections to Plaintiff's PTO 66 Show Cause Submission" is filed with this Complaint as **Exhibit 1-11**.

58.    On January 31, 2019, Judge Barbier issued an Order again finding Mr. Collier's PTO 66 noncompliant and dismissing his case, finding in relevant part,

> Mr. Collier: "James Collier: In his Particularized Statement of Claim, James Collier answered "yes" to the question, "Did BP, a government entity, or another company or entity hire you to perform cleanup work in response to the oil spill?" (Rec. Doc. 24970-1 at 4). Collier contends that this was "an unfortunate and inadvertent error." He further asserts that he did not engage

in "Response Activities" and was not a "Clean-Up Worker" under the Medical Benefits Settlement, therefore he is not a member of the Medical Benefits Settlement Class. (Rec. Docs. 24970, 25117). According to the Claims Administrator's report, however, Collier submitted a claim under the Medical Benefits Settlement for a Specified Physical Condition, the settlement program determined Collier was a class member, and Collier received partial payment on his claim. (Exhibit 1). The report is supported by the "Explanation of Payment," attached as Exhibit 7 to this Order, which the Claims Administrator provided at the Court's request. James Collier's B3 claims will be dismissed.

A copy of Judge Barbier's Order dated January 31, 2019 is filed with this Complaint as **Exhibit1-12**.

59.     Later on January 31, 2019, and after seeing the Order online Mr. Collier emailed Mr. Dominick and Ms. Maddox frustrated that "*[a]gain, I've been dismissed!*" And, asking, "*What do I do now? Do you have another plan or do I need to go ahead and search for a legal malpractice lawyer and go after Downs for screwing up my case?*" Mr. Dominick replied on February 4, 2019, advising, "*I am trying to work out a strategy for going forward. We are contacting Craig Downs about your case to see what information he has on the alleged payment from BP*." A copy of Mr. Collier and Mr. Dominick's email thread is filed with this Complaint as **Exhibit 1-13**.

60.     On February 4, 2019 at 5:08 p.m., Mr. Dominick emailed Craig Downs, Esq. stating in relevant part, "We filed an opt out action for James Collier. His case was dismissed because he apparently went through the settlement as one of your clients. James claims he never received money from the settlement. We are trying to figure out if we can save his case. Do you have any information about his filing a claim or his being paid?"

61.     On February 6, 2019 at 1:16 p.m., Mr. Dominick sent Mr. Collier a reply email, Subject: Non-compliant, stating in relevant part, "I have not heard back from Craig

Downs. We will try to contact him again today. I know this is stressful and frustrating."

62.     On February 13, 2019, at 3:14 p.m., in an internal email about Mr. Collier's questions about an appeal, Ms. Maddox stated, "I don't want to tell [Mr. Collier] we will appeal it when we currently have no legal basis to do so and also then have to tell him he needs to seek other counsel to sue Craig Downs."

63.     On February 22, 2019, at 12:04 p.m., Mr. Dominick emailed Mr. Collier, Subject: Non-compliant, stating, "We are drafting a motion for re-consideration based on your not being a class member, not receiving notice of the right to opt out and not receiving any settlement funds. We may need you to sign an affidavit. We plan to file the motion no later than Thursday. I think this is all we can do. *If the Court denies the motion, you should contact other counsel concerning a potential claim against your prior counsel.* As I indicated to you, we are not in a position to take such a case." A copy of Mr. Collier and Mr. Dominick's January – February 2019 email thread is filed with this Complaint as **Exhibit 1-14**.

64.     On February 28, 2019, Mr. Dominick filed a "Motion to Reconsider and Re-Open Plaintiff's Case," and via email on March 1, 2019, provided Mr. Collier with a copy. A copy of "Motion to Reconsider and Re-Open Plaintiff's Case" is filed with this Complaint as **Exhibit 1-15**.

65.     While Mr. Collier's underlying lawsuit against BP and others was pending NEXSEN PRUET had a quasi-co-counsel relationship with DOWNS LAW GROUP, as both law firms were representing clients with claims against BP.

66.     Mr. Collier followed Mr. Dominick's legal advice from the February 22, 2019, email and waited for the Court's decision on the motion for reconsideration.

67.    By April 2, 2019, NEXSEN PRUET allowed the statute of limitations to expire on Mr. Collier's legal malpractice claims against DOWNS LAW GROUP by advising Mr. Collier to wait to find out "[*i*]*f the Court denies the motion*" before "*contact[ing] other counsel concerning the potential claim against your prior counsel.*"

68.    On May 1, 2019, Judge Barbier issued an "Order [as to the Motions for Reconsideration, etc. of the PTO 66 Compliance Order]," confirming the dismissal and finding on page 3,

> The PTO 66 Compliance Order dismissed Sergio Alvarado's and James Collier's claims because they are class members in the Medical Benefits Settlement Class and their claims are barred by the class-wide release in the Medical Benefits Class Action Settlement Agreement. (Rec. Doc. 25356 at 11-13). Their motions for reconsideration are unpersuasive. The Court will deny the motions.

A copy of "Order [as to the Motions for Reconsideration, etc. of the PTO 66 Compliance Order]" is filed with this Complaint as **Exhibit 1-16**.

69.    On May 1, 2019, and after reviewing online Judge Barbier's Order denying the motion to reconsider and confirming the dismissal of his claims, Mr. Collier called Ms. Maddox. During their telephone discussion Ms. Maddox explained the remaining options, including a possible appeal, but she told Mr. Collier she did not think there was anything else they could do, and no appeal was filed. Ms. Maddox and Mr. Collier also discussed his plans to pursue legal malpractice claims against Mr. Downs and DOWNS LAW GROUP. Ms. Maddox agreed Mr. Collier should pursue those claims and told him when he finds a legal malpractice lawyer, she would be happy to speak with them, bring them up to speed on Mr. Collier's case, and share with them all the files that NEXSEN PRUET has pertaining to his case.

70.    On May 10, 2019, at 11:36 a.m., Mr. Collier emailed Ms. Maddox Subject:

Re: Meehan Law Firm, stating, "I reached out to Mr. Schmidt down in New Orleans. He handles legal malpractice suits also. He is out of town and will be back in the office next week. If he wants it, I think he might be my better bet."

71.    Later on May 10, 2019, at 11:37 a.m. Ms. Maddox forwarded Mr. Collier's email to Mr. Dominick cc: Marilyn Trevino, stating, "***Uhhhhhhhhh .....Wtf do I say to that***." Later the same day Ms. Trevino replied, "***Not a damn thing***" and Mr. Dominick replied, "***Ha! Let's discuss***[.]" Later on May 10, 2019, at 3:50 p.m., Ms. Maddox replied to Ms. Trevino, stating, "*I liked him, can't let the man get run over by shitty attorneys*."

72.    No one from NEXSEN PRUET ever responded to Mr. Collier's requests for assistance in finding a lawyer to handle his legal malpractice claims against DOWNS LAW GROUP.

73.    Upon information and belief, during their representation of Mr. Collier and after Mr. Collier's case was dismissed with prejudice, NEXSEN PRUET concealed from Mr. Collier information about his legal malpractice claims and their relationship with DOWNS LAW GROUP to delay his ability to pursue claims against DOWNS LAW GROUP, their "co-counsel" in the *Deepwater Horizon* MDL litigation.

74.    NEXSEN PRUET and its lawyers never explained to Mr. Collier that a) after April 2, 2017, Mr. Collier could no longer challenge his status as a Medical Benefits Settlement class member and his only remaining remedy against BP and the other defendants was a BELO claim; and b) his only remedy to recover the value of his punitive damage claims against BP and the other defendants was to pursue a legal malpractice claim against DOWNS LAW GROUP.

75.    Defendants are liable to Mr. Collier based on their failure to meet the

standard of care in their representation of Mr. Collier, including their a) failure to protect the statute of limitations from expiring on Mr. Collier's "BELO" claim in the BP *Deepwater Horizon* MDL and b) failure to protect the statute of limitations from expiring on Mr. Collier's legal malpractice claims against DOWNS LAW GROUP and its lawyers for their errors that precluded Mr. Collier's ability to recover punitive damages from BP and the other defendants in the *Deepwater Horizon* MDL.

76.     Had Defendants met the standard of care: in first properly advising Mr. Collier he could not opt out of the Medical Benefits Settlement Class after April 2, 2017; in pursing Mr. Collier's BELO claim as a class member in the *Deepwater Horizon MDL litigation*, more likely than not, Mr. Collier would have obtained a substantial recovery on his personal injury claims; and in advising Mr. Collier to proceed with his legal malpractice claims against DOWNS LAW GROUP before April 2019, more likely than not, Mr. Collier would have obtained a substantial recovery on his legal malpractice claims to recover the lost value of his punitive damage claims against BP and the other defendants in the *Deepwater Horizon MDL litigation*.

77.     Defendants are also liable to Mr. Collier based on their failure to meet the standard of conduct as fiduciaries to Mr. Collier, based on their failure to inform Mr. Collier of their own errors; and in concealing information from Mr. Collier about their relationship with DOWNS LAW GROUP and his legal malpractice claims against DOWNS LAW GROUP. To the extent these failures to meet the standard of conduct were purposeful, to delay Mr. Collier's ability to pursue claims against DOWNS LAW GROUP, their "co-counsel" in the *Deepwater Horizon* litigation, such abhorrent purposeful behavior should be punished by an assessment of punitive damages.

78.     At all relevant times, Mr. Dominick was a Partner or an Associate of NEXSEN PRUET.

79.     Mr. Dominick acted as an agent for NEXSEN PRUET.

80.     At all relevant times, NEXSEN PRUET acted by and through their employees and agents, including but not limited to Mr. Dominick and NEXSEN PRUET's other lawyers, staff and personnel, who acted within the course and scope of their employment and/or agency with all implied, inherent, apparent and express authority to so bind Mr. Dominick and NEXSEN PRUET, as master and principal by any negligent, willful, wanton and reckless actions and/or omissions making NEXSEN PRUET vicariously liable for same under the principles and doctrines of non-delegable duty, corporate liability, apparent authority, agency, ostensible agency and/or *respondeat superior*.

81.     The negligent acts, omissions, and liability of NEXSEN PRUET includes its own acts and/or omissions and the acts and omissions of its agents, principals, employees and/or servants, including but not limited to those by Mr. Dominick, both directly and vicariously, under principles and doctrines of non-delegable duty, corporate liability, apparent authority, agency, ostensible agency and/or *respondeat superior*.

### FOR A FIRST CAUSE OF ACTION
### (Legal Professional Negligence)

59.     The foregoing factual and jurisdictional allegations are reiterated and realleged as though set forth verbatim.

60.     At all relevant times, a client-lawyer relationship existed between Mr. Collier, on the one hand as client, and Mr. Dominick, on the other as the lawyer.

61.     Mr. Dominick owed professional duties to Mr. Collier to competently provide legal services, counsel, and advice regarding recovering on Mr. Collier's valuable

personal injury claims against BP, Halliburton, and Transocean.

62.    Mr. Dominick breached his professional duties to Mr. Collier based on his failure to meet the standard of care in the representation of Mr. Collier, including his failure to timely commence Mr. Collier's BELO claims.

82.    Mr. Dominick breached his professional duties to Mr. Collier based on his failure to meet the standard of care in the representation of Mr. Collier, including his failure to advise Mr. Collier on the need to protect the statute of limitations on his available legal malpractice claims against Mr. Downs and DOWNS LAW GROUP.

63.    Mr. Dominick failed to meet the minimum standard of care thereby breaching his professional duties to Mr. Collier in other ways and by other such particulars as the evidence developed during discovery in this case may demonstrate.

64.    As a direct and proximate result of Mr. Dominick's breach of professional duties, Mr. Collier suffered actual damages, consequential damages, and incidental damages in an amount to be determined by the jury at the trial of this case.

65.    As a direct and proximate result of Mr. Dominick's negligence, gross negligence, carelessness, recklessness, and utter disregard of their professional duties, Mr. Collier is entitled to recover punitive damages from Defendants.

66.    WHEREFORE, Plaintiff, James L Collier, prays for judgment on this cause of action against Defendants, NEXSEN PRUET, LLC and Paul A. Dominick, Esq., for actual damages, consequential damages, and incidental damages, for punitive damages, and such other relief as the Court may deem reasonable and proper.

## FOR A SECOND CAUSE OF ACTION
### (Breach of Fiduciary Duties)

67.     The foregoing factual and jurisdictional allegations are reiterated and realleged as though set forth verbatim.

68.     At all relevant times, a fiduciary relationship existed between NEXSEN PRUET and Mr. Dominick, on one hand as the law firm and lawyer, and Mr. Collier, on the other as the client.

69.     NEXSEN PRUET and Mr. Dominick owed fiduciary duties to Mr. Collier.

70.     NEXSEN PRUET's and Mr. Dominick's fiduciary duties included the duty of loyalty, as well as the duty to act single-mindedly in preserving, protecting and advancing Mr. Collier's rights and interests.

71.     NEXSEN PRUET and Mr. Dominick failed to meet the minimum standard of conduct and thereby breached their fiduciary duties of loyalty based on their failure to inform Mr. Collier of their own errors in failing to timely commence Mr. Collier's BELO claims.

72.     NEXSEN PRUET and Mr. Dominick failed to meet the minimum standard of conduct and thereby breached their fiduciary duties of loyalty based on their concealing from Mr. Collier information about his legal malpractice claims against DOWNS LAW GROUP.

73.     NEXSEN PRUET and Mr. Dominick failed to meet the minimum standard of conduct and thereby breached their fiduciary duties of loyalty based on their concealing from Mr. Collier their relationship with DOWNS LAW GROUP; and in doing so to delay his ability to pursue claims against DOWNS LAW GROUP.

74.     NEXSEN PRUET and Mr. Dominick failed to meet the minimum standard of

conduct and thereby breached their fiduciary duties to Mr. Collier in such other particulars as the evidence in this case may demonstrate.

75.    NEXSEN PRUET's and Mr. Dominick's acts and omissions in breach of their fiduciary duties to Mr. Collier were a substantial factor in causing financial harm to Mr. Collier, and as such, Mr. Collier is entitled to recover actual damages, consequential damages, incidental damages, all in an amount to be more specifically proven at trial.

76.    As a direct and proximate result of NEXSEN PRUET's and Mr. Dominick's carelessness, recklessness, and utter disregard of their fiduciary duties, Mr. Collier is entitled to recover punitive damages from Defendants.

77.    WHEREFORE, Plaintiff, James L. Collier, prays for judgment on this cause of action against Defendants, NEXSEN PRUET, LLC and Paul A. Dominick, Esq., for actual damages, consequential damages, and incidental damages suffered, and for punitive damages, and such other relief as the Court may deem reasonable and proper.

## FOR A THIRD CAUSE OF ACTION
### (Breach of Contract)

78.    The foregoing factual and jurisdictional allegations are reiterated and realleged as though set forth verbatim.

79.    NEXSEN PRUET entered into a contract with Mr. Collier, agreeing and contracting to provide competent and prudent legal services.

80.    NEXSEN PRUET breached the contract by failing to provide competent and prudent legal services.

81.    As a direct and proximate result of NEXSEN PRUET's breach of its contractual duties, Mr. Collier sustained actual, consequential and incidental damages in an amount to be determined by the jury at trial.

82.    WHEREFORE, Plaintiff, James L Collier, prays for judgment on this cause of action against Defendant, NEXSEN PRUET, LLC, for actual damages, consequential damages, and incidental damages, for punitive damages, and such other relief as the Court may deem reasonable and proper.

## TRIAL BY JURY

83.    Mr. Collier requests and demands a jury trial on all claims and issues so triable.

## EXPERT AFFIDAVIT

84.    Under S.C. CODE ANN. § 15-36-100(B) (2006), filed with this Complaint and incorporated herein by reference as **Exhibit 1-17**, is the affidavit of Paul J. Doolittle, Esq., which specifies at least one negligent act or omission claimed to exist and the factual basis for each claim based on the available evidence at the time of filing the affidavit.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, James L. Collier, prays for judgment against Defendants, NEXSEN PRUET, LLC and Paul A. Dominick, Esq., jointly and severally, for all actual damages, consequential damages, and incidental damages, and for punitive damages, all in an amount to be more specifically proven at trial, and the costs of this action, and for such other and further relief as this Honorable Court may deem just and proper.

Respectfully submitted,

PENDARVIS LAW OFFICES, P.C.

s/ Thomas A. Pendarvis
Thomas A. Pendarvis (Fed. Id. 5785)
Christopher W. Lempesis, Jr. (Fed. Id. 11462)
710 Boundary Street, Suite 1-A
Beaufort, SC 29902
843.524.9500
Thomas@PendarvisLaw.com
Chris@PendarvisLaw.com

Chad A. McGowan, Esq. (Fed Id. 6620)
MCGOWAN, HOOD & FELDER, LLC
1539 Healthcare Drive
Rock Hill, SC 29732
803-327-7800
cmcowan@mcgowanhood.com

Counsel for Plaintiff, James L. Collier

Beaufort, South Carolina

September 29, 2021

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Civil Action No.:  **2:21-cv-3161-BHH**

| | |
|---|---|
| James L. Collier,<br><br>       Plaintiff,<br><br>vs.<br><br>NEXSEN PRUET, LLC and Paul A.<br>Dominick, Esq.,<br><br>       Defendants. | **VERIFICATION** |

   I have read the foregoing Verified Complaint, and the statements contained therein are true to the best of my knowledge except as to those stated to be based upon information and belief, as to which I believes such matters to be true. I declare under penalty of perjury that the foregoing is true and correct.

             *James Collier*
             James L. Collier

Executed on August  8 , 2021